NOT FOR PUBLICATION                                                              CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

_____
                                          :
NOREEN FLEISCHMAN,                        :    Hon. Faith S. Hochberg, U.S.D.J.
                                          :
    Plaintiff,                            :    Civil Case No. 12-4869 (FSH)
                                          :
    v.                                    :    **OPINION**
                                          :
COMMISSIONER OF SOCIAL SECURITY,          :    February 28, 2014
                                          :
    Defendant.                            :
_____  :

    This matter comes before the Court upon Plaintiff's motion to review a final decision of the Commissioner of the Social Security Administration pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.

## I.  BACKGROUND

    This dispute involves whether Plaintiff was disabled before her disability insurance coverage expired on September 30, 2007. Plaintiff Noreen Fleischman asserts that she qualified for Disability Insurance Benefits based on her diagnosis of Crohn's disease and coronary artery disease. (Compl. ¶¶ 4-5). The last date for which she met the insured status requirements of sections 216(i) and 223(d) of the Social Security Act (hereinafter "date last insured") was September 30, 2007. As the Administrative Law Judge (ALJ) noted, regardless of whether

Plaintiff was disabled after the date last insured, "the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." (Tr. 12). September 30, 2007, however, is also the date of alleged onset of claimant's disability.

**A. Vocational History**

After receiving her high school diploma, Plaintiff worked from 1997 to 2001 as a safety engineer at an electrical company, training workers on construction site safety and Occupational Safety and Health Administration regulations. (Tr. 31-32, 217). She left the work force for several years to raise two children, (Tr. 32, 39), and returned in 2007 as a high-school teacher's aide for the Rahway School District. She performed this job from September of 2007 until at least the summer of 2008. (Tr. 25-26, 214). During this time, she assisted in the classroom and marked up papers for the teacher. (Tr. 26). Depending on the schedule, she would work either the full school day, from 8:30 A.M. to 2:30 P.M., or from 8:30 A.M. to 12 P.M. (Tr. 27.). At the hearing, she reported generally missing one day of work every two weeks, (Tr. 28), but at times missing as many as four days per week, (Tr. 34). The School District was aware of her medical issues and accepted her reduced schedule. (Tr. 28-29). The District allowed her to take off for medical reasons when necessary. (Tr. 34).

Plaintiff supplemented this income by working as a waitress at the Prudential Center, where she served drinks in the Ledge seating area during various events. (Tr. 29-30). This job involved both sitting and being on her feet, as well as carrying trays of drinks to customers' tables. (Tr. 36). She continued at this job until September 2008. (Tr. 214-216). In total for 2008, Plaintiff made $15,000, roughly sixty percent of which was attributable to her position as a teacher's aide. (Tr. 29, 35-36).

2

**B. Medical History**

   1.  Crohn's Disease

Plaintiff was diagnosed with Crohn's disease when she was fifteen years old. (Tr. 33). The severity of her symptoms varied from day to day during the relevant time period. She described these symptoms as stomach pains, fatigue, and the need to use the restroom frequently. (Tr. 34, 38). Plaintiff stated that she could walk no more than a block without becoming short of breath and could stand for no more than ten minutes, but could sit comfortably. (Tr. 48). She also stated that the pain and fatigue forced her to leave her job early on occasion or miss work altogether. Depending on the day, she was able to drive a car, shop for groceries, cook dinner, and clean her house. (Tr. 45).

The medical evidence regarding Crohn's disease indicated that Plaintiff was in remission during the relevant period. (Tr. 15, 57). Dr. Gerald Galst examined Plaintiff's medical records, including tests from her treating gastroenterologist. Between 2000 and 2008, he testified that she maintained stable weight and that multiple tests, including colonoscopies and stomach and small bowel biopsies, revealed "no activity of any substantial nature." (Tr. 56). The first indication that Plaintiff's Crohn's disease had recurred was after a CAT scan of her abdomen during an assessment on September 25, 2008. (Tr. 57). Dr. Galst concluded that no objective medical evidence was presented of active Crohn's disease until almost one year after the date last insured. (Tr. 57). Before the recurrence of her Crohn's disease in 2008, Dr. Galst testified that Plaintiff would have been able to do light level work and that her only limitation would be periodic absences from work. (Tr. 57-58).

2.  Coronary Artery Disease

Plaintiff was diagnosed with coronary artery disease in September 2008. She described difficulty breathing on September 15, 2008, was admitted to JFK Medical Center in New Jersey, and was diagnosed with dilated cardiomyopathy. (Tr. 59). Before 2008, during the relevant period, the only heart-related symptoms she was able to identify were an occasional shortness of breath and, at times, the feeling that her heart was beating fast. (Tr. 42).

Dr. Galst testified that Plaintiff's condition was severe enough to meet the cardiac Social Security Listing of Impairments as of 2008. Before that, however, he stated there were no indications of coronary artery disease that would meet the cardiac Listing: "There is no medical evidence that I have to suggest that she had a heart failure issue or problem prior to that and, in fact, her treating gastroenterologist in a variety of exhibits, indicates that this problem seems to have come on rather acutely at either the end of August 2008 or the beginning of September." (Tr. 54). When asked to estimate the earliest date, in relation to her diagnosis on September 25, 2008, at which Plaintiff met the cardiac Listing level, Dr. Galst responded, "the documented evidence suggests that this was sometime around then and not substantially before then." (Tr. 55). Based on the medical documentation, he concluded that the heart disease symptoms did not meet the Listing requirements before the date last insured. (Tr. 56). Based on her symptoms, Dr. Galst testified that Plaintiffs Residual Functional Capacity at the date last insured, September 30, 2007, was consistent with light level work. (Tr. 57-58).

**C. Procedural History**

On October 17, 2008, Plaintiff filed an application for disability insurance benefits, alleging an inability to work since September 30, 2007. (Tr. 174-80). The application was denied by the

4

Regional Commissioner of Social Security on December 4, 2008 and denied on reconsideration on April 16, 2009. (Tr. 66-72, 76-78). Plaintiff then requested an administrative hearing and appeared before ALJ Leonard Olarsch on January 13, 2011. (Tr. 21-65.)

ALJ Olarsch reviewed the case de novo and issued a decision on February 7, 2011, denying disability benefits. He found that Plaintiff suffered from a severe impairment during the relevant period, but that her residual functional capacity (hereinafter "RFC") during that period was compatible with her past relevant work. (Tr. 14-15). The Appeals Council denied Plaintiff's request for review. (Tr. 1-5). Plaintiff filed this action in federal court on August 3, 2012 seeking review of the Commissioner's final decision.

## II. THE DISABILITY STANDARD

Under the Social Security Act, an individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). An individual will be found disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner applies the following five-step sequential analysis to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a), 416.920. If at any step a decision can be made as to whether an individual is disabled, the analysis is complete and does not proceed to the remaining steps. *Id.*

*Step One - Substantial Gainful Activity:* The Commissioner must first determine whether the claimant is presently employed, and whether that employment constitutes substantial gainful activity. 20 C.F.R. § 416.972. Substantial activity is work "that involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). Gainful activity is any work "that you do for pay or profit." 20 C.F.R. § 416.972(b). If the Commissioner concludes that an individual is substantially and gainfully employed then that person cannot be disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b).

*Step Two - Severe Impairment:* If the individual is not engaged in any substantial gainful activity, she must then demonstrate that she suffers from a severe impairment or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). The impairment is severe if it "significantly limits [the individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Additionally, in order to meet the duration requirement, the impairment "must have lasted or must be expected to last for a continuous" 12 month period, unless it "is expected to result in death." 20 C.F.R. § 404.1509. If the individual fails to demonstrate a severe impairment or fails to meet the duration requirement, the disability claim will be dismissed. 20 C.F.R. § 404.1520(c).

*Step Three - Listed Impairment:* If the individual successfully demonstrates a severe impairment, the Commissioner must then determine whether the impairment meets or equals an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meet or equal a listed impairment, then she will be found to be disabled without considering her age, education, and work experience. 20 C.F.R. § 404.1520(d).

*Step Four - Residual Functional Capacity:* If the severe impairment does not meet or equal one of the impairments listed in Appendix 1, then the Commissioner must consider whether, despite the claimant's impairment, the claimant still possesses the RFC to perform his past relevant work. 20 C.F.R. § 416.920(e).

Past relevant work is defined as, "work that [the individual has] done within the past 15 years, that was substantial gainful activity, and lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1). If the individual has the capacity to perform past work, she will be found not disabled. If not, the Commissioner moves on to the fifth and final step. 20 C.F.R. § 416.920(e)-(f).

*Step Five - Other Work:* Finally, if the individual is unable to perform past relevant work, the Commissioner considers the individual's RFC, age, education, and work experience to determine whether she can adjust to other work. 20 C.F.R. § 404.1520(a)(4)(v). This work must exist in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(1). If the individual is unable to adjust to other work, she will be found to be disabled. However, if the Commissioner finds that claimant can adjust to other work, then she will be found not disabled.

This five step sequential analysis involves a shifting burden of persuasion. *Wallace v. Sec'y of Health and Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). The individual bears the

burden of persuasion for steps one through four. However, if the analysis reaches step five, the burden shifts to the Commissioner to prove that the individual is able to perform other work in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### III. THE ALJ'S DECISION

To be entitled to disability insurance benefits, a claimant must be under a disability during the time that she meets the insured status requirements for such benefits. *See* 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.130, 404.315(a); *see Kane v. Heckler*, 776 F.2d 1130, 1131 n.1 (3d Cir. 1985). If a claimant cannot demonstrate the onset of disability before the date last insured, the claimant is not entitled to benefits. *De Nafo v. Finch*, 436 F.2d 737, 739 (3d Cir. 1971).

The ALJ applied the five-step analysis in determining whether Plaintiff was disabled before the date last insured. At Step One, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through the date last insured. (Tr. 14). At Step Two, the ALJ determined that Plaintiff suffered from both Crohn's disease and coronary artery disease through the date last insured. (Tr. 14). However, at Step Three, the ALJ found that Plaintiff did not suffer from an impairment or a combination of impairments that met or equaled one listed in the Social Security Listing of Impairments found in Appendix 1 of 20 C.F.R. Part 404. (Tr. 14-15). At Step Four, the ALJ held that Plaintiff had the residual functional capacity to perform the full range of light work, stating that, "[g]iven the lack of evidence regarding the severity of the claimant's Crohn's disease and coronary artery disease prior to the last insured date, the evidence does not support a residual functional capacity below 'light.'" (Tr. 16). The ALJ compared the physical and mental demands of claimant's prior relevant work

as a teacher's aide with Plaintiff's RFC and determined that she was both able to perform the job as she actually did and how it is generally performed. (Tr. 16). Because Plaintiff was able to perform past relevant work, the ALJ determined that she was not disabled on or prior to September 30, 2007. (Tr. 16).

## IV. STANDARD OF REVIEW

This Court must review the final decision of the Commissioner to determine whether the administrative record contains substantial evidence to support his decision. 42 U.S.C. § 405(g); *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If there is substantial evidence supporting the Commissioner's finding, this Court must uphold the decision even if it might have reasonably made a different finding based on the record. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). "The ALJ's responsibility is to analyze all the evidence and to provide adequate explanations when disregarding portions of it." *Snee v. Sec'y of Health and Human Servs.*, 660 F. Supp. 736, 739 (D.N.J. 1987) (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

**V. REVIEW OF THE COMMISSIONER'S DECISION**

Plaintiff contends that the ALJ's findings lack substantial evidence because: (A) the ALJ allegedly departed from the medical expert's testimony; (B) the ALJ purportedly did not assess whether Plaintiff's medical impairments in combination met the requirements of a Listing under Step Three; and (C) that the ALJ's residual functional capacity determination is not supported by substantial evidence.

**A. Medical Expert Testimony**

Plaintiff contends that the medical expert's testimony was so evidently incorrect that the ALJ took the "unprecedented step of ignoring [the expert's testimony] in the decision." (Pl.'s Br. 9). She notes that, under *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 (3d Cir. 2003), the ALJ should receive expert testimony where, as here, the alleged onset date is an essential dispute.[1] Thus, Plaintiff argues the ALJ's decision is without substantial evidence because the ALJ purportedly disregarded Dr. Galst's testimony – "omitting every word of the testimony and any trace of the experts [sic] existence." This is a misreading of the decision. The ALJ referenced Dr. Galst's testimony, (Tr. 12), noted in his RFC assessment that he "has also considered opinion evidence" about the extent of Plaintiff's symptoms, (Tr. 15), and directly incorporated the expert's opinions on every issue relevant to the challenged findings at Steps Three and Four.

At Step Three, regarding whether Plaintiff's Crohn's disease met a Social Security Listing Impairment, Dr. Galst testified, that "it sounds as if her disease was in remission." (Tr. 57).

---

[1] To be clear, there is no dispute that the ALJ in fact received the testimony of a medical expert in accordance with Social Security Ruling 83-20. Dr. Galst graduated from Albert Einstein College of Medicine in 1960 and has been practicing medicine, specifically cardiology, since 1967. He is board certified in internal medicine and cardiovascular disease. (Tr. 52). Currently, he is an associate professor of medicine at the Albert Einstein College of Medicine. (Tr. 119-20).

Correspondingly, in the ALJ's opinion he stated: "it should be noted that the claimant's Crohn's disease had been in remission prior to the last insured date." (Tr. 15).  As to whether Plaintiff's heart disease met the cardiac Listing, Dr. Galst explicitly testified that Plaintiff's symptoms suggest that the first indication of heart failure was "sometime around [her September 2008 diagnosis] and not substantially before then," and not before the date last insured. (Tr. 55-56). Here, too, the ALJ adopted the expert's opinion, stating that the "first indication of congestive heart failure . . . [was] in September 2008." (Tr. 16).  When Dr. Galst was asked whether Plaintiff's coronary artery disease, in combination with her Crohn's disease, "meet or equal any of the listings under the Social Security law" as of the date last insured, (Tr. 52-53), the medical expert responded that Plaintiff did not meet or equal any Listing until "the beginning or during September 2008." (Tr. 54).  Incorporating the expert's opinion, the ALJ wrote: "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments." (Tr. 14).

   At Step Four, in assessing Plaintiff's Residual Functional Capacity, the expert testified that Plaintiff "certainly could have been able to do light level work."  (Tr. 58).  Similarly, the ALJ wrote that "the evidence does not support a residual functional capacity below 'light.'" (Tr. 16). Even though the ALJ did not include quotations of Dr. Galst's testimony in the written decision, the ALJ evidently considered and incorporated his opinions. The record demonstrates that Plaintiff's contention – that "the ALJ doesn't mention any of [the expert's] testimony, doesn't rely on it, and thus either rejected it as incredible or forgot [] the purpose of the expert's testimony . . . as if no expert testimony existed," (Pl.'s Br. 14-15) – is without factual basis.  The testimony of Dr. Galst in the record supports the ALJ's decision that Plaintiff was not under disability on or before the date last insured.

11

Plaintiff next argues that the expert's testimony contradicts the ALJ's findings at Step Two, where the ALJ determined that Plaintiff suffered from "severe impairments." Specifically, Plaintiff asserts that the expert's testimony that there was no medical evidence of active Crohn's disease or heart disease that met a Listed Impairment on or before the date last insured indicates that the ALJ disregarded the expert's testimony in finding Plaintiff had severe impairments. First, Plaintiff's argument is irrelevant because she has not challenged the ALJ's finding at Step Two. Rather she challenged the ALJ's findings at Step Three and Four, where the ALJ undoubtedly agreed with and adopted the findings of the medical expert. Thus, there was substantial evidence for the ALJ's findings on the challenged steps. Regardless, Dr. Galst was asked to testify regarding whether Plaintiff's impairments, alone or in combination, met or exceeded any Social Security Listing Impairment under Step Three, not whether her symptoms were "severe" according to the standard set forth in Step Two. (Tr. 52-53). The standards are different: one standard is a "de minimis screening device," *Newell*, 347 F.3d at 546, whereas the other is a medical determination "whether the impairment is on a list of impairments presumed severe enough by the SSA to render one disabled," *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004). The expert did not find, as Plaintiff argued, "that there was no evidence that Plaintiff was the slightest bit sick before expiration of insured status." (Pl.'s Br. 9). Instead, he identified some symptoms, such as diarrhea, that occurred during the relevant period, and stated "that the only really [sic] limitation was periodically missing work time." (Tr. 57). He concluded that these symptoms would still allow Plaintiff to do "light level work." (*Id.*). This finding is consistent with the ALJ's conclusion that Plaintiff's impairment at the date last insured passed the "de minimis screening" level of Step Two, but did not meet or exceed a Listing Impairment at Step Three.

Plaintiff also asserts that the medical expert was biased against her based on a relationship with the ALJ, who "personally chose the doctor owing to their association." (Pl.'s Br. 9). There is no basis in the record for this allegation. Nor has Plaintiff identified any evidence of illicit bias. *Richardson v. Perales*, 402 U.S. 389, 403-04 (1971) ("That the reports were adverse to [Plaintiff's] claim is not in itself bias or an indication of nonprobative character"); *Valenti v. Comm'r of Soc. Sec.*, 373 F. App'x 255, 258 (3d Cir. 2010) (rejecting a challenge based on an ALJ's purported bias because claimant had "not identified any evidence from the record in this case indicating any bias or misconduct on the part of the ALJ.").

Additionally, Plaintiff argues that the expert is incorrect because, given the severity of her condition in 2008, Plaintiff's condition must have existed during the relevant period, one year before diagnosis. But "[e]vidence of an impairment which reached disabling severity after the date last insured, or which was exacerbated after this date, cannot be the basis for the determination of entitlement to a period of disability and disability insurance benefits." *Manzo v. Sullivan*, 784 F. Supp. 1152, 1156-57 (D.N.J. 1991) (citing *De Nafo v. Finch*, 436 F.2d 737, 739 (3d Cir. 1971)). Instead the existence of a disability before the date last insured must be "established by adequate medical evidence . . . [not] by means of conclusory, self-serving testimony that she was disabled at the crucial time." *Manzo*, 784 F. Supp. at 1157. As required by SSR 83-20, "it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination. . . . This judgment, however, must have a legitimate medical basis." Thus, Plaintiff cannot meet her burden by merely asserting that her condition, "like virtually all heart disease, [is] a slowly progressive disease," (Pl.'s Br. 14). Plaintiff submitted no medical evidence to show that her condition upon diagnosis in 2008, which met the cardiac Listing, necessarily

13

implied that the disease developed over the course of years, and thus met the cardiac Listing in September 2007. Nor did Plaintiff point to any evidence that Dr. Galst's testimony was inconsistent with the Plaintiff's medical records. Instead, the testimony in the record directly contradicts Plaintiff's position that the disease was slowly progressive. When Plaintiff cross-examined the expert on the onset of the disease at the hearing, Dr. Galst responded that the disease could have, and likely did, develop rapidly, not over time: "her treating gastroenterologist in a variety of exhibits, indicates that this [coronary heart disease] seems to have come on rather acutely at either the end of August 2008 or the beginning of September." (Tr. 54). He explained that, "[s]ince [the heart condition] is idiopathic, nobody can really say. It may be the result of a recent viral infection." (Tr. 60).

Similarly, regarding her Crohn's disease, Dr. Galst testified that it was in remission between 2000 and 2008. He reviewed "innumerable studies" including "multiple endoscopy studies, both from the point of view of colonoscopy as well as studies of her gastrointestinal tract. Her stomach and small bowel biopsies were obtained. And none of these indicated any active Crohn's disease . . . ." (Tr. 56-57). During that time, the treating gastroenterologist did not attribute any symptoms to Crohn's disease, but instead cited irritable bowel syndrome. (*Id.*) The first indication that Plaintiff's Crohn's disease had recurred was after a CAT scan during an assessment on September 25, 2008, (Tr. 57), where Dr. Marc Wolfman stated his impression as "probable exacerbation of Crohn's disease." (Tr. 469, 471-72). Plaintiff has not presented any evidence in support of her burden to contradict Dr. Galst's conclusion or show that Plaintiff suffered from active Crohn's disease or coronary artery disease that would meet or exceed the Listing on the date last insured. Instead, Dr. Galst's opinion was consistent with the objective evidence and constitutes substantial evidence for the ALJ's decision.

### B. Explanation of Listing

Plaintiff asserts that ALJ did not explain his findings or compare them to a listed impairment. Plaintiff notes that *Burnett* requires the ALJ to explain his finding and address contradictory medical evidence. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). An ALJ errs where he "fail[s] to consider and explain his reasons for discounting all of the pertinent evidence before him." *Id. Burnett* is satisfied where there is "sufficient explanation to provide meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

While Plaintiff asserts that the ALJ's opinion is insufficient because it does not "explain which evidence contradicts his finding and which evidence supports his finding and why one set of medical data is found more persuasive than the other," (Pl. Br., 19), Plaintiff has not identified a single piece of contradictory "pertinent evidence" that the ALJ purportedly discounted. Instead, the Court's review of the record demonstrates that, as Dr. Galst testified, no medical evidence existed that Plaintiff met the cardiac Listing prior to September 2008. (Tr. 54). Similarly, all medical evidence suggested her Crohn's disease was in remission, and did not meet a Listed Impairment until at least August of 2008. (Tr. 57-58). This fully supported the ALJ's conclusion that "[a]lthough the severity of her coronary artery disease meets a Medical Listing as of September 15, 2008, this was after the last insured date of September [30], 2007. . . [and] that the claimant's Crohn's disease had been in remission prior to the last insured date." (Tr. 15) (citation omitted).

Regarding Plaintiff's claim that the ALJ failed to sufficiently assess whether a combination of Plaintiff's ailments met a listing, this is not supported by the record. During the hearing, the ALJ identified the Listing "402, part A and part B", (Tr. 54), and asked the expert whether "the record support[s] the fact that she might have equaled a listing if the symptoms -- if she had

cardiac symptoms and you considered that together with her Crohn's disease. Might that situation have . . . equaled the listing on the [date last insured]?" (Tr. 56). Dr. Galst testified that from 2000 to 2008 the medical records indicate that Plaintiff's Crohn's disease was not active and that she did not have a heart failure problem during the relevant period, such that neither impairment, nor the combination, met or equaled a Social Security Act Listing Impairment prior to the date last insured. (Tr. 56-58). This testimony provided substantial evidence for the ALJ's decision. Plaintiff has not identified any other Listing that the ALJ purportedly failed to compare to her impairments.

**C. RFC Determination**

Plaintiff alleges that ALJ erred in his Step Four evaluation and purportedly did not compare Plaintiff's residual functional capacity with the proper description of the physical and mental demands of past relevant work as a teacher's aide. (Pl.'s Br. 24).

The record, however, indicates that the ALJ adequately considered the demands of Plaintiff's prior relevant work. At the hearing Plaintiff testified that her job as a teacher's aide required sitting in the classroom, marking up papers for the teacher, and assisting the teacher. (Tr. 26). Similarly, in Plaintiff's work history report she indicated that she spent three hour each day standing and sitting and one hour stooping. Also, she indicated that the job required no lifting or carrying. (Tr. 215). This testimony is consistent with the United States Department of Labor's Dictionary of Occupational Titles, cited by the ALJ, which describes the position of teacher's aide as correlating with light work. (Tr. 16, citing DOT Code No. 249.367-074, 099.327-010). A job will be considered light work when the weight lifted is very little, but involves a good amount of walking or standing, or it involves mostly sitting with some pushing or pulling of

arms or legs. 20 C.F.R. § 404.1567(b). In considering whether Plaintiff was capable of light work, Dr. Galst testified that, with her symptoms, "she certainly could have been able to do light level work." (Tr. 58). Moreover, she was employed as both a teacher's aide and server at the Prudential Center through the date last insured and until at least May of 2008. (Tr. 26, 29). That year she made $15,000 in wages. (Tr. 29). The fact that Plaintiff worked for almost a year beyond the date last insured – after her condition worsened – provides substantial evidence for the ALJ's finding that she was capable of performing her past relevant work in September 2007. Relying on this evidence, the ALJ concluded that, "[g]iven the lack of evidence regarding the severity of the claimant's Crohn's disease and coronary artery disease prior to the last insured date, the evidence does not support a residual functional capacity below 'light.'" (Tr. 16). There is substantial evidence to support the ALJ's finding that "claimant was capable of performing her past relevant work prior to her last insured date." (Tr. 16).

## VI.  CONCLUSION

For the reasons set forth above, and after a careful review of the record in its entirety, the Court finds that there is substantial evidence to support the Commissioner's final decision that Plaintiff was not disabled on, or prior to, September 30, 2007.  Accordingly, the Commissioner's determination is affirmed. An appropriate Order follows.

                                          **/s/ Faith S. Hochberg**
                                          **Hon. Faith S. Hochberg, U.S.D.J.**